<strong style="color:red">CORRECTED</strong>

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1617V**
UNPUBLISHED

| | |
|---|---|
| CHRISTINE DAVIDSON, | Chief Special Master Corcoran |
| Petitioner, | Filed: February 8, 2024 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Ruling on the Record; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Heather Varney Menezes, Shaheen & Gordon, P.A., Manchester, NH, for petitioner.*

*Naseem Kourosh, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On November 18, 2020, Christine Davidson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 19, 2019. Petition at 1, 3. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and entitlement was found in the Petitioner's favor on August 4, 2022. The parties reached on impasse on the appropriate award for pain and suffering from Ms. Davidson's injury, however, and were ordered to brief damages.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below I find that Petitioner is entitled to **$110,000.00** in damages, representing compensation for actual pain and suffering, plus $2,354.19 for out-of-pocket expenses.

## I.  Petitioner's Medical Records

A complete recitation of the facts can be found in the Petition, the parties' respective briefs, and in Respondent's Rule 4(c) Report.

Petitioner received a flu vaccine on October 19, 2019. Ex. 8 at 9-10. The vaccination record does not indicate the site of administration, or whether it was intramuscularly injected.  She first reported severe left shoulder pain on December 4, 2019 "which began after receiving the influence vaccine to that area in October 2019." Ex. 4 at 9. An examination showed weakness, but otherwise normal range of motion. *Id.* at 10. Petitioner was diagnosed with left arm and deltoid pain.

On January 14, 2020, Petitioner began physical therapy. Ex. 6 at 2. She exhibited some diminished strength and rated her pain as three out of ten at that time, but also that her pain ranged from zero to seven out of ten. *Id.* Petitioner attended five physical therapy session from January 14 through February 21, 2020. Ex. 6 at 2-11.

Petitioner saw an orthopedist on February 19, 2020, reporting left shoulder pain since received a flu shot in October. Ex. 4 at 40. An examination showed mildly reduced range of motion and pain with impingement tests. *Id.* at 42. An x-ray showed minimal acromioclavicular joint degeneration, and she was assessed with subacromial bursitis. *Id.* at 42. Petitioner also received a steroid injection at that time. *Id.* at 42-43.

On June 2, 2020, Petitioner returned to her orthopedist. Ex. 4 at 66. She reported 85-90% improvement, but occasional twinges in her shoulder. *Id.* At that time, she exhibited mild reduced range of motion, but negative impingement signs and normal strength. *Id.* at 66. The orthopedist noted Petitioner was "markedly" and "significantly" improved following the steroid injection and physical therapy. *Id.*

Petitioner saw a new orthopedist on September 17, 2020. Ex. 7 at 30. She rated her pain as five out of ten, but also stated that she was 90% improved by June of 2020. *Id.* Further, she had intermittent recurrence of shoulder pain over the summer, and continued to experience limited range of motion and soreness with use. *Id.* An examination indicated that Petitioner shoulder was slightly depressed, mildly limited range of motion with some pain at the extreme ranges. *Id.* at 31. The treater diagnosed her with

left shoulder impingement. *Id.* On September 29, 2020, Petitioner underwent an MRI, which suggested low-grade bursitis. *Id.* at 8.

On October 1, 2020, Petitioner returned to the orthopedist reporting continued pain that was worse when reaching out or up. Ex. 7 at 39. The MRI was reviewed and deemed to show recurrent bursitis but no significant adhesive capsulitis. *Id.* at 40. A second steroid injection was administered at that time. *Id.*

Petitioner returned to physical therapy on October 16, 2020. Ex. 10 at 7. She reported pain levels as three out of ten, but that it varied from no pain to six out of ten. *Id.* Further, her shoulder hurt when moving it in certain ways but was otherwise improved with steroid injections and physical therapy. *Id.* Between October 16 and November 6, 2020, Petitioner attended five physical therapy sessions. *Id.* at 22. During that time, her pain was reported as between three and six out of ten. *Id.* at 22. The therapist also noted that Petitioner had little pain, full range of motion, improved strength, but did express periodic residual tightness. *Id.*

By November 12, 2020, Petitioner reported to her orthopedist that her shoulder was "much better", only causing brief pain once daily. Ex. 11 at 35. An examination showed very mild limited range of motion, no impingement signs, and good strength. *Id.* at 36. She saw the treater again over two months later, on January 18, 2021, reporting continued left shoulder pain with abduction, when lying on her side, and when raising her arm above shoulder height. Ex. 11 at 30. An examination showed slight impingement signs, mild limitations in range of motion, but no weakness. *Id.* at 31. Petitioner received a third steroid injection at that time.

On October 5, 2021, Petitioner again returned to her orthopedist, reporting that her pain had returned three months after the January steroid injection. Ex. 11 at 24. The pain was not significant but "more of an annoyance and sense of tightness…with certain motions." *Id.* The treater stated that Petitioner could continue receiving steroid injections or pursue surgery to alleviate her pain. *Id.* at 25. She opted for surgery, undergoing arthroscopic debridement and bursectomy on December 15, 2021. Ex. 12 at 7-8. The orthopedist noted that Petitioner's subacromial space was "dramatically bursitis." *Id.* at 7.

By January 13, 2022, Petitioner reported she was doing "quite well" with minimal pain and some discomfort at night. Ex. 13 at 15. Between January 27 and March 10, 2022, Petitioner attended seven physical therapy sessions. Ex. 14 at 3-19. By March 10, 2022, Petitioner reported that her shoulder was improved to her pre-surgical level, but she continued to report residual tightness and mild weakness. *Id.* at 3.

On April 4, 2022, Petitioner saw her orthopedist again, reporting that she was discharged from physical therapy but still had discomfort at night and occasional pain during the day. Ex. 13 at 10. She stated that her shoulder "can wake [her] with pain at night", and rated her pain as 1-2 out of 10 during the day, and 5 out of 10 at night. *Id.* at 6. The physical exam was largely unchanged from January 2021, and both Petitioner and Dr. Soghikian felt a steroid injection would not be worthwhile. *Id.* at 11.

## II.     Affidavit Evidence

Petitioner submitted two affidavits in support of her claim. Ex. 3, 15. She therein describes her injury and course or treatment, and how her injury impacted her life. Petitioner also stated that she continues to have decreased range of motion and pain, and that her shoulder pain "is about where it was prior to surgery". Ex. 3 at 2-3, Ex. 15 at 1. Further, her injury has made it difficult to care for her children and participate in daily activities. Ex. 3 at 3.

## III.    Damages

The parties filed memoranda in support of their respective damages positions on October 24, 2022. Petitioner is seeking $125,000.00 for pain and suffering, plus $2,354.19 for unreimbursed expenses. Petitioner's Motion for a Ruling on the Record ("Br."), ECF No. 42; Petitioner's Reply to Respondent's Response to Petitioner's Brief in Support of Damages ("Reply"), ECF No. 44. Respondent argued that $93,500.00 is an appropriate amount for pain and suffering. Respondent does not contest the $2,354.19 for unreimbursed expenses. Respondent's Response to Petitioner's Brief in Support of Damages Brief ("Opp."), ECF No. 43.

## IV.    Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL  837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related

injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[3]

## V.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Ms. Davidson asserts that the severity of her injury is most similar to what the petitioner experienced in *Wallace v. Sec'y of Health & Human Servs.,* No.16-1472, 2019 WL 4458393 (Fed. Cl. June 27, 2019) (awarding $125,000 in pain and suffering). In particular, she emphasizes that she suffered intermittent moderate pain for over three years, had three injections, three rounds of physical therapy (totaling seventeen sessions), an MRI, surgery. Br. at 7-9. Further, her injury has negatively impacted her life and her ability to care for her children. *Id.* at 9.

Respondent, by contrast, submits that the lesser award of $93,500.00 is appropriate. Opp. at 13-14. Respondent notes that Petitioner's injury was not as severe as in other cases that involved surgery. Opp. at 9. Further, Respondent argues that Petitioner's course of treatment included significant gaps, suggesting that her condition was not as severe as other cases. *Id*. at 9-10. Respondent cites to four cases wherein Petitioner was awarded between $95,000.00 and $100,000.00 for a SIRVA. *Martin v. Sec'y of Health and Hum. Servs.*, No. 19-830, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021) (awarding $100,000.00 for pain and suffering); *Shelton v. Sec'y of Health and Hum. Servs.*, No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for pain and suffering); *Hunt v. Sec'y of Health and Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. Jun. 16, 2022); *Juno v. Sec'y of*

---

[3] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

*Health and Hum. Servs.*, No. 18-643V, 2022 WL 17850717 (Fed. Cl. Spec. Mstr. Nov. 2, 2022) (awarding $100,000.00 for pain and suffering).

Based on the medical records, I conclude that Ms. Davidson suffered a mild-to-moderate SIRVA for approximately thirty months. She sought treatment six weeks after her vaccination, and initially her pain was mostly reported as mild or moderate, but it varied from no pain to seven out of ten.

Petitioner responded well to treatment, especially steroid injections, resulting in relatively long periods of relief when no treatment was sought. For example, Petitioner did not seek treatment between February 19, 2020 when she received a steroid injection and June 2, 2020, when her first orthopedist reported that she was "markedly" and "significantly" improved. Ex. 40 at 42-43, Ex. 4 at 66. Petitioner next sought treatment ten weeks later on September 17, 2020. Ex. 7 at 30. Another, lengthier, gap between January 19 and October 5, 2021 indicates that Petitioner did not experienced much pain during this period. Ex. 11 at 31, 24. However, she also ultimately underwent arthroscopic surgery on December 15, 2021. Ex. 12 at 7. By January 13, 2022, Petitioner was reportedly doing "quite well" with minor discomfort. Ex. 13 at 15.

The overall severity of the injury at issue herein is thus not high enough to justify the $125,000.00 requested by Petitioner. I note that the SIRVA cases cited by Petitioner otherwise involved more severe pain and more extensive physical therapy. For example, in *Wallace*, petitioner reported constant aching prior to surgery, pain levels of six out of ten and was assessed with 77% disability. 2019 WL 4458393, at *1-4, 13.

The present facts are most analogous to those from *McCabe v. Sec'y of Health & Hum. Servs.*, No. 19-1916V, 2021 WL 6755494, at *10 (Fed. Cl. Dec. 29, 2021) (awarding $110,000.00 for pain and suffering). The *McCabe* petitioner sought treatment approximately one month after vaccination, had multiple steroid injection, extensive physical therapy, and underwent arthroscopic surgery over a two year period. *Id.* His pain was often reported as mild, and his outcome was good, reporting stable pain intensity six weeks post surgery.  While *McCabe* involved significantly more physical therapy, Ms. Davidson had periods of relief following certain treatments.

Taking all of the above into account, I find that $110,000.00 for pain and suffering is fair compensation.

**Conclusion**

For all the reasons discussed above, and based on consideration of the records as a whole, I award Petitioner $112,354.19 comprised of $110,000 for past pain and suffering and $2,354.19 for out-of-pocket expenses.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.